UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TEVIN JONES,

        Plaintiff,

    v.

ENTERPRISE HOLDINGS,
INC., *et al.*,

        Defendants.

:

:

:

Case No. 2:25-cv-1519
Chief Judge Sarah D. Morrison
Magistrate Judge Chelsey M.
Vascura

## OPINION AND ORDER

This matter is before the Court on (1) the Motion to Dismiss (ECF No. 21) filed by Enterprise Holdings, Inc. ("EH"), EAN Holdings, LLC, d/b/a Enterprise Rent-A-Car ("EAN" and, together with EH, "Enterprise"), Jason Pearson, and John Bowron (collectively with Enterprise, "Defendants"); (2) Defendants' Motion to Stay (ECF No. 9); and (3) three Motions to Strike (ECF Nos. 10, 18, and 22) filed by Defendants and Plaintiff Tevin Jones. These Motions are fully briefed and ripe for the Court's consideration.

For the reasons below, Defendants' Motion to Dismiss is **GRANTED**. Defendants' Motion to Stay and the parties' three Motions to Strike are therefore **DENIED as moot**.

## I. BACKGROUND

The following summary draws from the allegations in Mr. Jones's Complaint (Compl., ECF No. 1), as well as any documents integral to and incorporated therein.

Mr. Jones, who is African American, started working for Enterprise in or around August 2014. (Compl. ¶¶ 2, 8–9, 14.) Mr. Pearson and Mr. Bowron, who are white, supervised and managed Mr. Jones during his employment. (*Id.* ¶¶ 10–11.)

While at Enterprise, Mr. Jones was a "high-performing employee who routinely assumed significant responsibilities beyond his assigned role[.]" (Compl. ¶ 15.) He routinely performed tasks that were managerial in nature, including training new staff, managing employees and fleet production, and running daily operations in the absence of supervisors. (*Id.* ¶¶ 16–17.) In completing these tasks, he consistently met or exceeded his annual performance requirements. (*Id.* ¶ 14.)

### A.      Mr. Jones's Desire for Higher-Level Roles

Mr. Jones wanted Enterprise to promote him to supervisory roles. (Compl. ¶ 18.) In or around October 2017, Enterprise promoted him to a Customer Service Representative. (*Id.* ¶ 13.) In 2018, however, Area Rental Manager David Clunk, a white man, denied Mr. Jones the chance to compete for a promotion to Fleet Coordinator. (*Id.* ¶ 19.) Enterprise instead selected Dominic Pizzuro, a white man who resigned from the position one month later. (*Id.* ¶ 20.) Mr. Jones later earned a promotion to Emerald Club Specialist in or around April 2019. (*Id.* ¶ 13.)

In 2022, Mr. Jones learned of several promotion opportunities but ultimately did not receive any. First, he applied to be a Fleet Production Supervisor, but Mr. Pearson discouraged him from pursuing the position. (Compl. ¶¶ 21–22.) Enterprise selected Tyler Gibson, a white man, for the role. (*Id.* ¶ 22.) Mr. Gibson resigned three months later. (*Id.*)

Second, Enterprise created the role of Fleet Logistics Coordinator in March 2022. (Compl. ¶ 23.) The Complaint does not allege that Mr. Jones applied for this position. Nevertheless, Mr. Pearson, acting in his capacity as a manager, "altered [the] job requirements for this position," and Enterprise chose Peter Smith, a white man, for the job. (*Id.* ¶¶ 23–24.) Mr. Smith resigned after six months. (*Id.*)

Finally, another Fleet Production Supervisor position became available in August 2022. (Compl. ¶ 25.) Mr. Jones alleges that he was not considered for the position because Mr. Pearson had previously discouraged him from applying for the first Fleet Production Coordinator role. (*Id.* ¶ 26.) Enterprise selected Jeffrey Bender, a white man, for the job, but he resigned after four months. (*Id.* ¶ 27.)

### B.     Mr. Jones's Medical Condition

Mr. Jones was diagnosed with "migraine headache with aura" in or around November 2020. (Compl. ¶ 29.) He told Mr. Bowron of his diagnosis via email. (*Id.*)

A year and a half later, Mr. Jones's condition worsened. (Compl. ¶ 30.) He began suffering from chronic migraines on a daily basis, and he emailed Mr. Bowron about these migraines. (*Id.*) Mr. Bowron then told Mr. Pearson about Mr. Jones's condition. (*Id.* ¶ 31.)

Thereafter, Mr. Pearson began harassing Mr. Jones about his attendance and medical condition. (Compl. ¶ 32.) For example, Mr. Pearson repeatedly instructed Mr. Jones's direct supervisor to ask him about his need for medical leave and questioned the legitimacy of his medical needs. (*Id.*) At some point, Mr. Jones

"attempted to exercise his rights" under the Family and Medical Leave Act ("FMLA"), but Mr. Bowron gave him insufficient or misleading guidance. (*Id.* ¶ 33.)

### C. Mr. Jones's Termination

In October 2022, Mr. Pearson initiated a "confrontation" with Mr. Jones. (Compl. ¶ 35.) The incident led to an investigation, during the pendency of which Mr. Bowron suspended Mr. Jones but not Mr. Pearson. (*Id.* ¶ 36.) According to Mr. Jones, the investigation focused solely on his reaction and ignored Mr. Pearson's role as the aggressor. (*Id.* ¶ 37.)

Enterprise fired Mr. Jones in or around October 17, 2022—less than a week after his confrontation with Mr. Pearson. (Compl. ¶ 38.) Mr. Jones does not otherwise detail the results of Enterprise's investigation in the Complaint.

## II. PROCEDURAL HISTORY

Mr. Jones filed a Charge of Discrimination against Enterprise with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC") in November 2022. (Compl., Ex. 2, ECF No. 1-1, PAGEID # 12.) The EEOC issued him a notice of his right to sue on December 12, 2022. (*Id.*, Ex. 3, ECF No. 1-1, PAGEID # 13.)

On March 9, 2023, Mr. Jones, proceeding without counsel, filed his first suit against Defendants in this Court. (ECF No. 1, Case No. 2:23-cv-920.) He alleged claims for violation of the FMLA and race and disability discrimination. (*Id.*; *see also* Am. Compl., ECF No. 17, Case No. 2:23-cv-920.) As the case progressed, the Court granted Defendants' motion for a protective order arising from Mr. Jones's

conduct and ordered him to pay Defendants an amount equal to one hour of attorney's fees under Federal Rules of Civil Procedure 26 and 37. (ECF No. 44, Case No. 2:23-cv-920.) In December 2024, though, the Court dismissed the case without prejudice upon Mr. Jones's request because he indicated that he had lost his job and could no longer afford to prosecute his claims. (ECF No. 48, Case No. 2:23-cv-920.)

Mr. Jones, still *pro se*, refiled his claims in the instant case in December 2025. (Compl., ECF No. 1.) Because he has yet to pay the fee that the Court required in his earlier case, Defendants moved to stay this case until he makes the payment, which totals $540. (ECF No. 9.) Mr. Jones opposed a stay and further moved to strike Defendants' Motion to Stay and two notices of appearance from Defendants' counsel. (ECF No. 10.) After Defendants replied in support of their Motion to Stay (and responded in opposition to Mr. Jones's Motion to Strike), Mr. Jones submitted a proposed Surreply challenging the Motion to Stay (ECF No. 12), which Defendants promptly moved to strike (ECF No. 18.)

A few days later, Mr. Jones submitted a "corrected" filing to replace his proposed Surreply. (ECF No. 20.) Therein, he included his Reply in support of his Motion to Strike and a request for leave to file the proposed Surreply, both of which he had meant to include with his earlier filing. (*Id.*) Defendants then moved to strike that new filing and also moved to dismiss the case. (ECF Nos. 21, 22.) Mr. Jones failed to respond to either Motion, despite obtaining an extension of time to respond to the Motion to Dismiss. (ECF Nos. 23, 24.)

5

### III.    MOTION TO DISMISS

#### A.      Standard of Review

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

6

Although a *pro se* litigant is entitled to a liberal construction of his pleadings and filings, he still must do more than assert bare legal conclusions. *See Martin v. Overton*, 391 F.3d. 710, 714 (6th Cir. 2004). Indeed, his "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### B.    Analysis

Mr. Jones asserts five claims in the instant case: (1) race discrimination under Title VII of the Civil Rights Act of 1964 against Enterprise (Count I); (2) race discrimination under 42 U.S.C. § 1981 against all Defendants (Count II); (3) disability discrimination under the Americans with Disabilities Act ("ADA") against Enterprise (Count III); (4) FMLA interference and retaliation against all Defendants (Count IV); and (5) race and disability discrimination and retaliation under Ohio law against Enterprise (Count V). (Compl. ¶¶ 41–60.) He seeks back pay, front pay, lost benefits, compensatory damages for emotional distress, punitive damages, and attorney's fees if he obtains counsel. (*Id.*, PAGEID ## 9–10.)

Defendants challenge Mr. Jones's claims on numerous grounds. Initially, they contend that the pertinent statutes of limitations bar his Title VII, ADA, and FMLA claims. (ECF No. 21, PAGEID # 107.) They next argue that he fails to state a § 1981 claim for several reasons. (*Id.*, PAGEID # 108.) Lastly, they ask for dismissal of his state-law claim for the same reasons as applicable to his federal claims. (*Id.*, PAGEID # 111.)

7

###### 1.   The Title VII, ADA, and FMLA claims are time-barred.

"A Title VII plaintiff must file [his] employment-discrimination complaint in the district court within 90 days of receiving [his] right-to-sue letter from the EEOC." *Robinette v. ProMedica Pathology Lab'ys, LLC*, No. 21-3867, 2022 WL 4540192, at \*2 (6th Cir. May 9, 2022) (citing 42 U.S.C. § 2000e-5(f)(1); *Truitt v. County of Wayne*, 148 F.3d 644, 647 (6th Cir. 1998)). The same time period applies to plaintiffs bringing ADA claims. *See Spencer v. Wendy's Co.*, No. 2:25-CV-173, 2025 WL 3443082, at \*2 (S.D. Ohio Dec. 1, 2025) (Graham, J.) (quoting *McGhee v. Disney Store*, 53 F. App'x 751, 752 (6th Cir. 2002)); *see also* 42 U.S.C. § 12117(a) (incorporating Title VII's requirements). Federal courts have "strictly enforced" these statutory limits. *See, e.g.*, *Gibson v. Clossman Catering, LLC*, No. 1:19CV263, 2020 WL 1331917, at \*1 (S.D. Ohio Mar. 23, 2020) (Barrett, J.) (citing *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 557 (6th Cir. 2000)).

Here, Mr. Jones received his right-to-sue letter on December 12, 2022. (Compl. ¶ 7; *id.*, Ex. 3, ECF No. 1-1, PAGEID # 13.) He filed the instant lawsuit on December 30, 2025—nearly three years after his 90 days expired on March 12, 2023. Dismissal of his ADA and Title VII claims is thus warranted.

That Mr. Jones originally filed these claims within the 90-day period as part of his first case does not save him now. (*See* Compl., ECF No. 1, Case No. 2:23-cv-920 (S.D. Ohio Mar. 9, 2023).) "[T]he filing of a prior complaint does not toll the ninety-day period and the court cannot extend the time for filing." *Tate v. United Servs. Associates, Inc.*, 75 F. App'x. 470, 471 (6th Cir. 2003) (citing *Wilson v.*

8

*Grumman Ohio Corp.*, 815 F.2d 26, 27 (6th Cir. 1987)). As such, Mr. Jones's 90-day clock started running when the EEOC issued his right-to-sue notice, and his first complaint, which the Court later dismissed without prejudice, does not toll the statutory filing period. *See Wilson*, 815 F.2d at 28 ("[A] dismissal without prejudice leaves the situation the same as if the suit had never been brought, and [ ] in the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending."); *see, e.g.*, *Tate*, 75 F. App'x at 471 (affirming dismissal of plaintiff's refiled case as untimely when she filed complaint within 90-day deadline, voluntarily dismissed it, and refiled after deadline passed).

Equitable tolling is also not appropriate. Although Title VII and ADA filing requirements "are jurisdictional, they are subject to equitable tolling in limited circumstances." *Wilson*, 815 F.2d at 28 (citing *Brown v. Mead Corp.*, 646 F.2d 1163, 1165 (6th Cir. 1981)). But when a Title VII or ADA claim is "dismissed after the ninety-day limitation has expired, there is no statute of limitations to toll." *Gibson*, 2020 WL 1331917, at *2 (internal quotation marks and citations omitted). Mr. Jones's deadline expired on March 12, 2023, and the Court thereafter dismissed the first action in December 2024. (ECF No. 48, Case No. 2:23-cv-920.) Therefore, even if Mr. Jones were to present evidence that equitable reasons exist to excuse the untimeliness, the Court cannot equitably toll his claims.

Mr. Jones's FMLA claim fares no better. A plaintiff may bring an FMLA claim "not later than 2 years after the date of the last event constituting the alleged

9

violation for which the action is brought," unless the violation was "willful," in which case the statute of limitations is three years. 29 U.S.C. §§ 2617(c)(1)–(2). To plead willfulness, a plaintiff must plausibly allege that defendants "act[ed] with knowledge that [their] conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements." *Roller v. Brennan*, No. 2:17-CV-241, 2018 WL 4405834, at *4 (S.D. Ohio Sept. 17, 2018) (Preston Deavers, M.J.) (citation omitted). At the motion-to-dismiss stage, a plaintiff "must do more than make the conclusory assertion that a defendant acted willfully." *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014).

Defendants argue that a two-year statute of limitations applies because Mr. Jones has not alleged willfulness. (ECF No. 21, PAGEID # 108.) True, he does not use the word "willful" in his Complaint, but he does allege that "Defendants retaliate[d] against [him] for exercising or attempting to exercise his FMLA rights by terminating his employment." (Compl. ¶ 55.) FMLA retaliation claims based on a termination in retaliation for exercising FMLA rights are generally subject to the three-year statute of limitations because "retaliation automatically includes willfulness." *See Schaneville v. Publix Super Markets, Inc.*, No. 3:20-CV-01038, 2021 WL 5054106, at *7 (M.D. Tenn. Nov. 1, 2021) (citing cases); *accord Katoula*, 557 F. App'x at 498–99 (implying that retaliation would be willful activity). At this juncture, then, the Court will apply a three-year statute of limitations to Mr. Jones's FMLA claim.

10

Still, the above timing principles bar this claim, too. The deadline for Mr. Jones to bring his FMLA claim was October 17, 2025 (three years after the latest alleged FMLA violation, *see* Compl. ¶¶ 38, 55). He filed his first case within this period, but he voluntarily dismissed that case in December 2024, and such dismissal "leaves the situation the same as if the suit had never been brought." *Wilson*, 815 F.2d at 27. Because he did not refile his FMLA claim until December 2025—two months late—his claim may not proceed. *See, e.g., Saunders v. Greater Dayton Reg'l Transit Auth.*, No. 3:17-CV-00212, 2019 WL 4646992, at \*6 (S.D. Ohio Sept. 24, 2019) (Rice, J.) (finding "unavailing" any argument that dismissal of first-filed case extends time period to file FMLA claim).

"[W]hen the complaint affirmatively shows that the claim is time-barred, dismissing the claim under Rule 12(b)(6) is appropriate." *Terry v. Kennedy*, No. 2:24-CV-1200, 2025 WL 948919, at \*5 (S.D. Ohio Mar. 28, 2025) (Marbley, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)). Here, Mr. Jones's FMLA, Title VII, and ADA claims are clearly barred by the applicable statutes of limitations. The Court thus **GRANTS** Defendants' Motion as to Counts I, III, and IV.

### 2.    The Complaint fails to state a § 1981 claim.

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001), *op. supp. on denial of reh'g*, 266 F.3d 407 (6th Cir. 2001). The statute states:

> All persons within the jurisdiction of the United States shall have the
> same right in every State and Territory to make and enforce contracts,

11

> to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Section 1981 claims are not immune from the requirements of *Iqbal* and *Twombly*, meaning that a plaintiff's complaint must "plead sufficient facts to state claims of race … discrimination that are plausible on its face." *Sam Han v. Univ. of Dayton*, No. 13–3048, 2013 WL 5943207 at \*3 (6th Cir. Nov. 5, 2013). The plaintiff need not make out a *prima facie* case of discrimination at this stage, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), but the complaint "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could draw the reasonable inference that [the defendant] discriminated against [the plaintiff] with respect to his race[,]" *Sam Han*, 2013 WL 5943207, at \*3 (citation omitted). These requirements apply equally to *pro se* litigants. *See Garrett v. Belmon Co. Sheriff's Dept.*, No. 08–3978, 2010 WL 1252923, at \* 2 (6th Cir. April 1, 2010).

In this case, Mr. Jones alleges that he was a qualified African American employee and that Enterprise, acting through white managers, denied him promotions "in favor of similarly situated, less qualified white candidates." (Compl.

¶¶ 2, 28.) He also asserts that Defendants suspended and fired him after a "confrontation" with his white supervisor (Mr. Pearson) and a "biased and pretextual" investigation. (*Id.* ¶¶ 35–38.) Defendants took these actions, he insists, because of his race. (*Id.* ¶ 47.)

Mr. Jones's Complaint, however, primarily consists of unsupported, conclusory assertions of racial discrimination. Missing from his Complaint are factual allegations from which a reasonable person could infer that racial animus was a factor in Defendants' promotion or termination decisions. For instance, Mr. Jones alleges that the white individuals chosen for promotions were similarly situated to him and were less qualified than him, but he alleges no facts in support of these allegations. Even more basic, he fails to allege that he actually applied for promotions in 2018, March 2022, and August 2022. And he neglects to offer any details about the confrontation with Mr. Pearson and the resulting investigation, let alone connect these incidents to his race—that he is African American and Mr. Pearson is white, standing alone, is not enough.

Ultimately, Mr. Jones conclusorily alleges that he was not promoted and was terminated based on his race, but his Complaint does not assert facts that, taken as true, establish the plausibility of those contentions. Accordingly, Defendants' Motion is **GRANTED** as to Count II.

### 3. The Court declines to exercise jurisdiction over the state-law claim.

Finally, Mr. Jones raises a claim against Enterprise under Ohio law. (Compl. ¶¶ 57–60 (citing Ohio Rev. Code § 4112.02).) He argues that Enterprise's conduct

"constitutes unlawful race discrimination, disability discrimination, failure to accommodate, and retaliation under the Ohio Fair Employment Practices Act." (*Id.*)

The United States district courts are "courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Once a court has original jurisdiction over some claims in the action, it can exercise supplemental jurisdiction over additional claims that are part of the same case or controversy. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Harper v. Auto Alliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (holding that claims are part of the same case or controversy if they derive from a "common nucleus of operative facts"). But supplemental jurisdiction is discretionary and "need not be exercised in every case in which it is found to exist." *United Mine Workers of Am.*, 383 U.S. at 726.

Here, the Court lacks original jurisdiction over Mr. Jones's state-law claim against EAN because they are citizens of the same state (Ohio). (*See* Compl., PAGEID # 1); *see, e.g., Givens v. Longwell*, No. 2:25-CV-593, 2025 WL 1797046, at *3 (S.D. Ohio June 30, 2025) (Vascura, M.J.), *R&R adopted*, 2025 WL 2451158 (S.D. Ohio Aug. 26, 2025) (Morrison, C.J.). "After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998). So, having dismissed Mr. Jones's federal claims against EAN, the Court declines to exercise supplemental jurisdiction over his state-law claim.

14

Unlike EAN, EH is a citizen of a different state than Mr. Jones. (*See* Compl., PAGEID # 1.) This does not change the outcome, though, because the Complaint does not allege an amount in controversy—rather, Mr. Jones merely requests an unspecified amount of back pay, front pay, benefits, compensatory damages, and punitive damages. (*Id.*, PAGEID # 10.) Without more support and given the overall lack of detail in the Complaint, the Court cannot find that the amount in controversy is sufficient to confer original jurisdiction over the state-law claim against EH under 28 U.S.C. § 1332. And, considering the presumption of dismissal noted above, the Court will not exercise supplemental jurisdiction over this claim.

As such, the Court **GRANTS** Defendants' Motion as to Count V.

## IV.    REMAINING MOTIONS

Because the Court has dismissed Mr. Jones's Complaint in full, the Court need not determine whether the case should be stayed or whether certain filings should be stricken. Defendants' Motion to Stay and the parties' competing Motions to Strike are accordingly **DENIED as moot.**

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 21) is **GRANTED**. Defendants' Motion to Stay (ECF No. 9) and the three Motions to Strike (ECF Nos. 10, 18, and 22) are **DENIED as moot**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

15